1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

9

10

11

12

13

| TRACEY J. TERRY, | NO.  C16-5990-JPD |
| Plaintiff, | |
| v. | ORDER AFFIRMING THE COMMISSIONER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

14

15

16

17

18

19

Plaintiff Tracey J. Terry appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Commissioner's

decision is AFFIRMED.

20

I.       FACTS AND PROCEDURAL HISTORY

21

22

23

At the time of the administrative hearing, plaintiff was a fifty-one year old woman with

the equivalent of a high school education.  Administrative Record ("AR") at 55, 101.  Her past

work experience includes employment as a cashier/checker, pharmacy technician, cleanup

24

1    janitor, and home cleaner.  AR at 39, 59-60.  Plaintiff was last gainfully employed in 2007 as a

2    cashier.  AR at 148.

3        On June 13, 2013, plaintiff filed a claim for SSI payments and DIB, alleging an onset

4    date of November 1, 2010.  AR at 10.[1]  Plaintiff asserts that she is disabled due to severe

5    depression, degenerative disc disease of the lumbar and cervical spine, and chronic migraines.

6    AR at 101.

7        The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 116-

8    33, 134-50.  Plaintiff requested a hearing, which took place on December 3, 2014.  AR at 30-

9    66.  On July 30, 2015, the ALJ issued a decision finding plaintiff not disabled and denied

10   benefits based on her finding that plaintiff could perform a specific job existing in significant

11   numbers in the national economy.  AR at 7-23.  The ALJ's request for review was denied by

12   the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the

13   Commissioner as that term is defined by 42 U.S.C. § 405(g).  On December 6, 2016, plaintiff

14   timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

II.        JURISDICTION

15

16       Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

17   405(g) and 1383(c)(3).

III.       STANDARD OF REVIEW

18

19       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

20   social security benefits when the ALJ's findings are based on legal error or not supported by

21   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

22

23       [1] Plaintiff filed a previous application for benefits which was denied by the ALJ on
     February 27, 2013.  AR at 67-80.  Because plaintiff did not appeal that denial, the previous
24   ALJ's decision is administratively final.  AR at 10.  The ALJ in this case limited her review to
     the period beginning on February 28, 2013.  AR at 10.

Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Ms. Terry bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§
423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments
are of such severity that she is unable to do her previous work, and cannot, considering her age,
education, and work experience, engage in any other substantial gainful activity existing in the
national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-
99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for
determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§
404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At
step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at
any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step
one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.
§§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the
Commissioner proceeds to step two.  At step two, the claimant must establish that she has one
or more medically severe impairments, or combination of impairments, that limit her physical
or mental ability to do basic work activities.  If the claimant does not have such impairments,
she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe
impairment, the Commissioner moves to step three to determine whether the impairment meets
or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),
416.920(d).  A claimant whose impairment meets or equals one of the listings for the required
twelve-month duration requirement is disabled.  *Id.*

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves
significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §
404.1572.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 30, 2015, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since February 28, 2013.

3. The claimant has the following severe impairments: degenerative joint disease in the cervical and thoracic spine, headaches, and depression.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can occasionally stoop, kneel, crouch, and climb ramps and stairs. She cannot crawl or climb ladders, ropes or scaffolds. The claimant should avoid concentrated exposure to vibration and hazards. She can perform simple repetitive tasks of reasoning level 1 to 3. She can

engage in superficial social interactions with others in that they can work around and interact briefly, but would do best in tasks that do not require high-level socialization such as bargaining, persuading, and customer service.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1963 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.[3]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2013, through the date of this decision.

AR at 13-23.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err by failing to fulfill her duty to develop the record?

2. Did the ALJ err in evaluating the medical opinion evidence?

3. Did the ALJ err in evaluating plaintiff's testimony?

4. Did the ALJ err in evaluating the lay witness testimony of plaintiff's roommate?

Dkt. 19 at 1; Dkt. 20 at 1.

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

## VII. DISCUSSION

A.    The ALJ Did Not Fail to Fully Develop the Record, and the Procedural Errors During the Hearing Were Harmless

Plaintiff contends that the ALJ committed harmful error in this case by failing to fully and fairly develop the record. Dkt. 19 at 2. Specifically, plaintiff was unrepresented during the administrative hearing and declined the ALJ's offer of an extension of time to find a new representative because she had found it unhelpful to be represented by counsel at a prior hearing. AR at 34-35. Plaintiff told the ALJ at the beginning of the hearing that she had tried to review the CD containing her medical records, but had been unable to do so. AR at 33. The ALJ did not halt the hearing at that point, but advised her "when you get home, what I'd like you to do is open that up, check it out, make sure there's nothing on there that doesn't belong to you or is in error." AR at 33. Plaintiff argues that the ALJ should have immediately assisted plaintiff in opening her CD so she could see her file during the hearing. AR at 33.

Later in the hearing, the ALJ told plaintiff "I'm going to talk to the vocational expert ["VE"] for a minute." AR at 58. The ALJ then proceeded to question the VE without advising plaintiff that she had a right to cross-examine the VE. AR at 58-63. Plaintiff advised the ALJ that she did not understand the VE's references to medium and light work, and the ALJ apologized, stating "Those are all kind of based on the regulations, which I guess I should have talked to you about, but I forgot." AR at 63. The ALJ then gave a short explanation of the disability determination process, but still did not advise plaintiff of her right to cross-examine the VE. AR at 63-65. Plaintiff contends that "the ALJ's failure to assist [plaintiff] in accessing her file and her failure to inform [plaintiff] of her right to cross-examine the vocational expert violated the ALJ's duty to fully and fairly develop the record." Dkt. 19 at 3.

The Commissioner responds that the ALJ did not err because the ALJ's duty to further develop the record was not triggered here, as the evidence was not ambiguous or inadequate to allow for proper evaluation of the evidence. Dkt. 20 at 2 (citing AR at *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). The Commissioner contends that neither of the alleged deficiencies identified by plaintiff implicates the ALJ's duty to develop the record. *Id.*

In social security cases, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (citation omitted). This includes the duty to fully and fairly develop the record, even when the claimant is represented by counsel. *Thompson v. Schweiker*, 665 F.2d 936, 941 (9th Cir. 1982); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001). *See also Tonapetyan,* 242 F.3d at 1150; *Brown,* 713 F.2d at 443.

The Court agrees with the Commissioner that the ALJ in this case did not abandon her "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan,* 242 F.3d at 1150. On the contrary, at the outset of the hearing the ALJ recommended that plaintiff consider postponing the hearing to seek new counsel because "they do tend to know Social Security law and can focus on the evidence that's most relevant to your case and point it out and argue the case . . . to your benefit." AR at 34-35. As noted above, the ALJ advised her to review the medical records on the CD as soon as she gets home in case there are any issues that needed to be addressed before a decision was issued. AR at 33. At the conclusion of the hearing, the ALJ further advised plaintiff that she was going to obtain additional medical records for the plaintiff to add to her file, which would

take two weeks to a month, at which point plaintiff should "follow-up in a month and call and ask for a copy of your CD, we can have that sent to you so that you can look it over and make sure everything is there." AR at 65. The ALJ told plaintiff to "review it and make sure that all that new evidence came in, but I definitely won't go forward until I have all of the evidence." AR at 65. Thus, the record shows that the ALJ in fact took numerous steps to fully and fairly develop the record by soliciting additional medical records on plaintiff's behalf following the hearing, and ensuring that plaintiff understood what steps she needed to take to review the updated record before the ALJ issued her final decision.

Although plaintiff has not shown that the ALJ violated her duty to develop the record, the Court does agree with plaintiff that the ALJ committed a procedural error by failing to advise plaintiff of her right to question the VE. The ALJ also should have questioned plaintiff further regarding her familiarity with the medical records on the CD before the hearing began in case a continuance was warranted, because plaintiff was entitled under the regulations to review her records at the hearing or at an earlier time. *See* 20 C.F.R. § 404.916(b)(3) (2017) ("(b) Your procedural rights. We will advise you that you have the following procedural rights in connection with the disability hearing process: . . . (3) You or your representative may review the evidence in your case file, either on the date of your hearing or at an earlier time at your request, and present additional evidence; (4) You may present witnesses and question any witnesses at the hearing").

However, plaintiff has not shown how either of these procedural errors were likely prejudicial to her case. Instead, plaintiff argues that if she had access to her file during the hearing and was properly informed of her right to cross-examine the VE, the ALJ "could have reached a different disability determination." Dkt. 21 at 3. However, in *McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2011), the Ninth Circuit determined that the applicable inquiry is not

whether prejudice could have resulted from the ALJ's error, but whether there was a "substantial likelihood of prejudice":

> We infer [ ] that, despite the burden to show prejudice being on the party claiming error by the administrative agency, the reviewing court can determine from the "circumstances of the case" that further administrative review is needed to determine whether there was prejudice from the error. Mere probability is not enough. But where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency "can decide whether re-consideration is necessary." By contrast, where harmlessness is clear and not a "borderline question," remand for reconsideration is not appropriate.

640 F.3d at 888 (quoting *Shinseki v. Sanders,* 556 U.S. 396, 129 S.Ct. 1696, 1706-08 (2009)). *See also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 932 n.10 (9th Cir. 2014) ("McLeod is limited to situations where the record is insufficient for the court to make its own prejudice determination, and remand is required for the ALJ to determine the harmfulness of the omission in the first instance.").

Here, plaintiff has not shown a substantial likelihood of prejudice. For example, plaintiff has not argued that any medical records were erroneously omitted from the record in her case, and therefore were not considered by the ALJ. She also does not allege that if she had been properly afforded an opportunity to question the VE, she would have asked the VE a particular question that would have altered the outcome of the case. Accordingly, plaintiff has not established that the ALJ's errors resulted in a substantial likelihkood of prejudice, and were harmful.

      B.   <u>The ALJ Did Not Err in Evaluating the Medical Opinion Evidence</u>

        *1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives

more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2.     James L. Roscetti, M.D.

On April 26, 2013, Dr. Roscetti completed a DSHS physical functional evaluation for plaintiff. AR at 522-28. Plaintiff complained of neck pain and mid-back pain, muscle spasms, nerve pain, trouble breathing, sitting standing, and loss of feeling. AR at 522. On examination, Dr. Roscetti found that plaintiff had a reduced range of motion in her neck, back, and hips. AR at 524. However, plaintiff had a full range of motion in hip flexion, hip adduction, hip abduction, knees, ankles shoulders, elbows, wrests, and thumbs, with normal findings in the extremities and reflexes within normal limits. AR at 524, 526, 527. He diagnosed plaintiff with (1) "moderate" cervical degenerative arthritis, which limited plaintiff's ability to sit, stand, walk, life, carry, and handle; (2) "marked" lumbar degenerative arthritis, which limited plaintiff's ability to push, pull, stoop, and crouch; (3) and "marked" depression, which he opined limited her ability to communicate. AR at 525. Dr. Roscetti opined that plaintiff was limited to sedentary work, and that she was unable to work at heights. AR at 523, 525.

The ALJ summarized Dr. Roscetti's findings, noting earlier in her decision that Dr. Roscetti's "examination of the back revealed diffuse paravertebral spasm with limitation in flexion, extension and lateral bending. The doctor diagnosed probable chronic cervical and lumbar disc disease." AR at 16. The ALJ indicated that she gave Dr. Roscetti's opinion "little weight" for three reasons. First, "because the doctor's evaluation of the claimant did not have the type of significant clinical abnormalities to substantiate the opinion." AR at 19. Second,

the ALJ found that "[i]t appears the doctor relied heavily on the claimant's subjective report of symptoms and limitations, which are not fully credible for the reasons stated in this decision." AR at 19. Third, the ALJ found that "it is also inconsistent with the clinical findings of treatment providers. Specifically, Dr. Khan found she had no tenderness and normal mobility of the thoracic and lumbar spine. ARNP Carlson found she had normal gait and station, negative straight leg raise and full strength in the lower extremities. Dr. Polo found she had full motor strength, intact sensation, normal reflexes, and normal heel-toe tandem gait." AR at 19.

The ALJ's reasons for discounting Dr. Roscetti's opinion that plaintiff is limited to sedentary work are specific, legitimate, and supported by substantial evidence in the record. First, the Court finds that the ALJ reasonably discounted Dr. Roscetti's opinion that plaintiff is limited to sedentary work as being unsupported by his own clinical examination findings, which were largely unremarkable. Specifically, the ALJ concluded that "the doctor's evaluation of the claimant did not have the type of significant clinical abnormalities to substantiate the opinion." AR at 19. Dr. Roscetti's physical examination findings were entirely normal, with the exception of some range of motion limitations in plaintiff's back, neck, and hip flexors. AR at 524-26. Plaintiff has not cited any authority suggesting that the range of motion limitations identified by Dr. Roscetti would limit her to sedentary work. AR at 19. Thus, inconsistency between Dr. Roscetti's conclusion and her own clinical findings on examination – which were mostly normal - was a legitimate reason for the ALJ to discount Dr. Roscetti's medical opinion.

The ALJ's other two reasons for rejecting Dr. Roscetti's opinion were also specific, legitimate, and supported by substantial evidence. As noted above, the ALJ rejected Dr. Roscetti's opinion as being inconsistent with the clinical findings of other examining treatment

providers, and based in large part upon plaintiff's less than credible symptom testimony. The ALJ adequately explained what parts of the record she considered to be inconsistent with Dr. Roscetti's opinion, and she specifically cited to the unremarkable clinical findings of Dr. Khan, ARNP Carlson, and Dr. Polo. AR at 19. *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions). Dr. Kahn found no tenderness and normal mobility in the spine, with only "mildly reduced ROM." AR at 553-54. Treating nurse practitioner Caroline Carlson, ARNP found that plaintiff had a "normal gait and station," with full strength in her lower extremities, although she also reported "diffuse muscle tightness" and tenderness in her thoracic and lumbar spine. AR at 811, 823. Neurologic examiner Kathleen Polo, M.D., found that plaintiff had full strength, intact sensation, normal reflexes, and a normal gait. AR at 633-634.[4] These treatment providers' mostly unremarkable physical examinations provided a valid basis for the ALJ to reject Dr. Roscetti's conclusion that plaintiff was physically limited to sedentary work.

The ALJ could also properly reject Dr. Roscetti's opinion as being based "to a large extent" on plaintiff's subjective self-reports, which the ALJ considered to be less than fully credible. *Tommasetti*, 533 F.3d at 1041 (citing *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir. 1999)). As discussed below, the ALJ provided several clear and convincing

---

[4] As the Commissioner points out, the ALJ also noted elsewhere in the decision in support of her finding that "the claimant's allegations are not fully consistent with the objective medical evidence" that "Dr. Brown found she had full strength and intact sensation in the upper and lower extremities." AR at 18. Dr. Brown noted that plaintiff's neck was "quite stiff," and diagnosed "posterior neck pain" but "no radiculopathy and no myelopathy" based upon plaintiff's 2013 cervical MRI. AR at 665. Thus, plaintiff's assertion that "none of the finding cited by the ALJ here directly contradict the range of motion findings of Dr. Roscetti and Dr. Brown" misses the point. The ALJ reasonably supported her finding that despite the range of motion limitations, which the ALJ does not dispute, Dr. Roscetti's opinion that plaintiff was limited to sedentary work was inconsistent with the record as a whole. AR at 18.

reasons for giving plaintiff's subjective symptom testimony less weight. As a result, the ALJ did not err in rejecting Dr. Roscetti's opinion that plaintiff is limited to sedentary work, which was largely based upon plaintiff's self-reported symptoms, because it was not substantiated by his own findings on examination. The ALJ's reasons for discounting Dr. Roscetti's opinion that plaintiff is limited to sedentary work are specific, legitimate, and supported by substantial evidence in the record.

### 3. Alysa A. Ruddell, Ph.D.

Dr. Ruddell completed a DSHS psychological evaluation on April 26, 2013. Dr. Ruddell diagnosed plaintiff with a pain disorder associated with psychological and medical factors, and adjustment disorder with mixed depression and anxiety. AR at 518. She opined that plaintiff was markedly limited in her ability to adapt to changes in a routine work setting. AR at 519. She further assessed numerous moderate limitations in functioning with respect to plaintiff's ability to perform routine tasks without special supervision, make simple work-related decisions, be aware of normal hazards, take appropriate precautions, ask simple questions or request assistance, maintain appraise behavior in a work setting, complete a workday/workweek without interruptions from psychological symptoms, and set realistic goals and plan independently. AR at 519.

On mental status examination, Dr. Ruddell noted that plaintiff (1) showed pain symptoms and a limp, (2) had an uncertain gait, (3) had to expend effort to get up after sitting at the desk, (4) over-endorsed problems, (5) showed impaired concentration on the serial threes test, (6) showed impaired abstract thinking, and (7) and showed impaired insight/judgment. AR at 520. All other examination findings were normal, such as a normal appearance, affect, mood, social behavior, thought content, and orientation. AR at 520. Dr. Ruddell expressed doubt regarding plaintiff's effort on at least one part of the examination, noting that plaintiff

"completed 13 serial 3's in 28 seconds with a final error, raising concerns about effort."  AR at

520.  Plaintiff was also able to complete a three-step task in the waiting room at the doctor's

office by following the instructions on the form directing her to complete the forms, and then

keep the forms with her and return the clipboard to the counter, which plaintiff did.  AR at

520.[5]

The ALJ rejected Dr. Ruddell's opinion because "it is inconsistent with the doctor's

essentially unremarkable examination of the claimant.  Furthermore, this was a one-time exam

to obtain benefits."  AR at 19.  In addition, "the opinion is inconsistent with the claimant's

activities of daily living and treatment history for mental health issues.  She had no history of

psychiatric hospitalizations or emergency room visits."  AR at 19-20.  The ALJ found that "the

record shows she retains very good functioning despite her depression."  AR at 20.

Plaintiff contends that the ALJ erred because Dr. Ruddell described a number of

clinical findings which support her opinion.  In addition, the fact that this is a "one time

examination to obtain benefits" is never a legitimate reason to reject an examining physician's

opinion.  Dkt. 19 at 6.  Plaintiff further contends that the ALJ erred because "her opinion is not

meaningfully inconsistent with any of Terry's activities, nor is it meaningfully inconsistent

with Terry's treatment history."  *Id.*  Finally, plaintiff argues that "the ALJ also errs by

implicitly rejecting Dr. Ruddell's diagnosis of pain disorder associated with psychological and

medical factors."  *Id.*

As a threshold matter, the Commissioner concedes that the ALJ erred by failing to

acknowledge that by diagnosing a pain disorder, Dr. Ruddell actually diagnosed a somatoform

disorder.  Specifically, at step two the ALJ stated that plaintiff's "somatoform disorder is not a

---

[5] On May 7, 2013, a non-examining psychologist, Aaron Burdge, Ph.D., reviewed and
affirmed Dr. Ruddell's opinion.  AR at 514.

severe impairment.  A State agency psychological consultant diagnosed the impairment.  The medical evidence of record shows no related treatment, and no other treatment providers or examiners have diagnosed the condition."  AR at 13.  The parties agree that the ALJ's statement is inaccurate, as Dr. Ruddell also diagnosed a pain disorder associated with psychological and medical factors, which is a somatoform disorder.  Dkt. 20 at 12 (citing AR at 518).  Plaintiff argues, however, that the ALJ's error "was not at step two, as she proceeded beyond step two in her analysis; her harmful error was in failing to include in her [RFC] all of the limitations caused by all of Terry's physical and mental impairments, including her pain disorder associated with psychological and medical factors."  Dkt. 19 at 6.  The Court does not agree that the ALJ's error was harmful in this case.

An impairment is only severe if it significantly limits a claimant's ability to do basic work activity.  Plaintiff has not identified any work-related limitation due to a somatoform disorder that was omitted from the RFC in this case, and therefore she has failed to establish harmful error.[6]  Similarly, the Court finds that the ALJ erred by concluding that the fact that Dr. Ruddell was performing a "one time examination for benefits" somehow rendered her opinion less credible.  Such reasoning is not consistent with the law of this Circuit.  These errors were harmless in this case, however, because the ALJ provided several other specific and legitimate reasons, supported by substantial evidence, to discount Dr. Ruddell's opinion.

Plaintiff only states in a conclusory fashion that Dr. Ruddell's opinion was "not meaningfully inconsistent with any of Terry's activities" or her "treatment history," but provides no analysis or basis for disturbing the ALJ's findings in this regard.  The Court finds that, in fact, the ALJ's conclusion that "the record shows she retains very good functioning

---

[6] Dr. Ruddell specifically declined to opine as to the impact of this diagnosis on plaintiff's functioning, instead deferring "to medical professionals for recitation of medical difficulties and impact on functioning."  AR at 518.

despite her depression," AR at 20, was amply supported by the record.  The ALJ found that plaintiff is only mildly restricted in her activities of daily living, as she reported she does not require any assistance to perform her daily activities.  AR at 14.  Plaintiff reported that she can making quick meals and perform household chores such as sweeping the kitchen floor, making the bed, watering plants, and doing laundry.  AR at 14, 264.  She reported that she goes outside daily, walks or drives a car, shops in stores once or twice a week as needed, and can handle her funds.  AR at 14.  Her hobbies include reading, drawing, gardening, sewing, painting, and watching television.  AR at 14, 266, 518, 529.  Plaintiff reported that she uses the computer approximately three hours per day to check email and be on social sites, and regularly uses the library.  AR at 14, 308, 337, 518.  The ALJ reasonably found Dr. Ruddell's assessment of moderate and marked limitations to be inconsistent with this level of functioning.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1992) (upholding the ALJ's rejection of treating psychologist's opinion that claimant had marked mental limitations because it was inconsistent with the claimant's activities).

Similarly, the ALJ reasonably concluded that Dr. Ruddell's opinion was inconsistent with plaintiff's treatment history for mental health issues.  AR at 19-20.  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").  As the ALJ noted, the mental health counseling notes document few symptoms and relatively good functioning.  AR at 19-20.  Plaintiff has also received no treatment for her somatoform disorder.  Plaintiff has provided no analysis to disturb the ALJ's finding.

Finally, the ALJ could reasonably find that Dr. Ruddell's mental status examination findings did not support a marked limitation in her ability to adapt to changes in a routine work setting, or her other moderate limitations.  AR at 517-21.  For example, Dr. Ruddell observed

that plaintiff's attention to detail was adequate, and she successfully performed a three-step command, and yet Dr. Ruddell assessed plaintiff with moderate limitations in her ability to perform routine tasks without special supervision.  AR at 519.  Although plaintiff demonstrated impaired concentration on the serial threes test, Dr. Ruddell also expressed concerns about plaintiff's level of effort during that test.  AR at 520.  Although plaintiff offers an alternative view of the mental status examination findings, the ALJ could reasonably find that Dr. Ruddell's findings were inconsistent with her assessment of moderate and marked limitations.  AR at 519.  Accordingly, the ALJ provided several specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Ruddell's opinion.

### 4. *Jan Lewis, Ph.D.*

Plaintiff argues that the ALJ erred by failing to include in her RFC non-examining psychologist Dr. Lewis' opinion that "[d]ue to her subjective experience of pain and depressive symptoms, her pace may slow and persistence wane as task complexity increases."  Dkt. 19 at 8 (citing AR at 20, 129).  However, the Court agrees with the Commissioner that there was no conflict between Dr. Lewis' opinion and the RFC in this case, because the ALJ found that plaintiff was able to perform simple, repetitive tasks.  AR at 15.  Thus, Dr. Lewis' opinion regarding plaintiff's ability to perform "increasingly complex tasks" does not conflict with the RFC in this case, as it would if the ALJ had instead found that plaintiff could perform complex tasks.  Accordingly, plaintiff has not established any error in the ALJ's treatment of Dr. Lewis' opinion.

### C. The ALJ Did Not Err in Evaluating Plaintiff's Testimony

#### 1. *Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not

supported by substantial evidence.  A determination of whether to accept a claimant's

subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929;

*Smolen*, 80 F.3d at 1281.  First, the ALJ must determine whether there is a medically

determinable impairment that reasonably could be expected to cause the claimant's symptoms.

20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces

medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

testimony as to the severity of symptoms solely because they are unsupported by objective

medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v.

Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the

claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the

claimant's testimony.[7]  *Burrell v. Colvin* 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).  *See also Lingenfelter v. Astrue*, 504

F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically

identify what testimony is not credible and what evidence undermines the claimant's

complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at

722.  The ALJ may consider "ordinary techniques of credibility evaluation," including a

claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and

conduct, daily activities, work record, and testimony from physicians and third parties

concerning the nature, severity, and effect of the alleged symptoms.  *Thomas v. Barnhart*, 278

---

[7] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation."  SSR 16-3p.  However, this change is effective March 28, 2016 and not applicable to the July 30, 2015 ALJ decision in this case.  The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

<blockquote>

2.    *The ALJ Provided Several Clear and Convincing Reasons for Discounting Plaintiff's Testimony*

</blockquote>

The ALJ found that although plaintiff's "medically determinable impairments could possibly cause the alleged symptoms…the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons stated below." AR at 17. Specifically, the ALJ cited two reasons for finding plaintiff's testimony not fully credible in this case: (1) plaintiff's testimony was inconsistent with the medical evidence, and (2) plaintiff's testimony regarding her limitations was inconsistent with her daily activities. AR at 18-19. As discussed below, the Court finds that the ALJ's reasons were clear, convincing, and supported by substantial evidence.

First, the ALJ rejected plaintiff's testimony because it was inconsistent with the medical evidence. AR at 17-18. The ALJ includes a very lengthy discussion of the evidence relating to both plaintiff's physical and mental limitations in her discussion. AR at 17-19. With respect to plaintiff's physical limitations, the ALJ found that plaintiff's statements were inconsistent with the objective medical evidence. For example, the ALJ pointed out that although treatment providers have found that plaintiff has diffuse spasms, tightness and tenderness of the neck and upper back with reduced range of motion, her physical examinations have been otherwise unremarkable. AR at 17. Moreover, "electrodiagnostic study of the left upper extremity was unremarkable," "diagnostic imaging of the thoracic spine showed mild to moderate multilevel degeneration," and "diagnostic imaging of the cervical spine showed no more than mild abnormalities." AR at 17. The ALJ concluded that "these clinical findings do not suggest disabling physical limitations." AR at 17. The ALJ

specifically pointed out that "the claimant's allegations are not fully consistent with the objective medical evidence," as plaintiff alleges that she has "constant neck pain and fatigue" and is unable to "sit or stand for more than 10 to 20 minutes." AR at 18. She alleged that "she could not walk more than half a block without stopping to rest." AR at 18. In light of the fact that diagnostic imaging showed only mild abnormalities and "treatment providers repeatedly noted she was negative for fatigue, malaise, muscle weakness, gait change, and numbness and tingling," the ALJ could reasonably conclude that although plaintiff experiences neck pain "the objective medical evidence does not support the severity of symptoms alleged at the hearing." AR at 18. Inconsistency with the medical evidence was a clear and convincing reason for the ALJ to find plaintiff's testimony less than fully credible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Similarly, the ALJ found that plaintiff's allegations related to her depression were inconsistent with the medical evidence. AR at 18. For example, plaintiff alleged that "because of her daily chronic pain she was severely depressed and could barely function on a daily basis" due to "a lot of panic attacks," frequent crying spells, and because she could "only pay attention 2 to 5 minutes depending on pain levels." AR at 18. The ALJ pointed out plaintiff's presentation and performance on mental status examination for numerous treatment providers contradicted plaintiff's statements, because they reflected adequate attention, concentration, and memory, and the ability to complete a three-step command. AR at 18. Plaintiff also reported being able to get along "very well" with authority figures, follow written instructions "very well," and that she can finish what she starts without breaks. AR at 18. The ALJ could reasonably conclude that "the medical evidence when considered as a whole" is inconsistent with plaintiff's statements, and instead supports the ALJ's finding that plaintiff can perform the mental demands of some simple unskilled work. AR at 19. Accordingly,

inconsistency with the objective medical evidence was a clear and convincing reason for the ALJ to find plaintiff's testimony less than fully credible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

Finally, the ALJ found that plaintiff's "daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR at 19. As discussed above, plaintiff reported that she did not require assistance with her activities of daily living, and reported that she is able to prepare meals daily, perform household chores (such as sweeping the kitchen floor, making the bed, watering plants, and laundry), going outside daily and alone, traveling by walking and driving a car, visiting the library, and shopping in stores once or twice a week as needed. AR at 19. Plaintiff further reported that her hobbies include reading, drawing, gardening, sewing, painting, watching television, and using the computer about three hours per day checking email and on social sites. AR at 19. The ALJ could reasonably conclude that plaintiff's daily activities contradicted her statements that she could barely function on a daily basis, only lift between a half pound and one pound, or stand or walk for long periods. AR at 336, 341, 262, 267, 304, 309, 336, 341, 343. Similarly, plaintiff's statements that she can only concentrate for two to five minutes at a time, AR at 341, is contracted by her hobbies such as reading, sewing, painting, and drawing, which require significant concentration. AR at 14, 266, 308, 337, 518. Inconsistencies between plaintiff's testimony and her daily activities is a clear and convincing reason for the ALJ to find plaintiff's statements less than fully credible. *See Bray*, 554 F.3d at 1227. Accordingly, plaintiff has not shown that the ALJ erred in evaluating plaintiff's subjective symptom testimony.

D.     The ALJ Did Not Err in Evaluating the Lay Witness Testimony of Plaintiff's Roommate

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Plaintiff alleges that the ALJ erred by discounting the lay witness statements of her roommate, Leslie DeGrote. AR at 313-20. Ms. DeGrote completed a third party function report for plaintiff on July 10, 2013. AR at 313-20. She indicated that plaintiff "is in constant pain, mostly back but also some leg and foot. She can't do anything for extended periods. She can't walk long distances without hurting." AR at 313. She indicated that plaintiff is able to do some "light chores and cares for the pets. Spends some time on the computer." AR at 314. Ms. DeGrote further indicated that "pain wakes her up," and "she has been in constant pain as long as I've known her. She was a store clerk before and pharmacy tech." AR at 314. She indicated that plaintiff does not require special reminders to care for herself, and she can perform light cleaning, laundry, and sweep the kitchen floor. AR at 315. Ms. DeGrote indicated that plaintiff goes outside daily, and can go out alone, drive a car, and shop for groceries without assistance. AR at 316. Her hobbies include reading, gardening, caring for pets, visiting the library, and watching TV. AR at 317. She indicated that plaintiff "is depressed a lot," and has "been in pain since I've known her." AR at 318.

1    The ALJ found that Ms. DeGrote's statements "are given some weight because they

2    reflect her personal observations of the claimant. However, I am unable to find the statement

3    probative in terms of the ultimate issue of disability in light of the medical and other factors of

4    this case." AR at 21. The ALJ indicated that Ms. DeGrote "was reliant on the claimant's

5    subjective description of her impairments, which are not entirely credible in this case. Further I

6    conclude that the lay witness statements cannot outweigh the analysis of the objective clinical

7    and laboratory evidence, as well as the claimant's overall functional abilities." AR at 21. The

8    ALJ then cited to the objective evidence and treatment providers' examination findings that she

9    found to be inconsistent with Ms. DeGrote's lay witness statement. AR at 21.

10    The ALJ did not err. Inconsistency with the medical evidence is a germane reason to

11    reject a lay witness's opinion. *Bayliss*, 427 F.3d at 1218. Ms. DeGrote indicated that plaintiff

12    was in constant pain, could not do anything for extended periods, walk "maybe 200 yards," and

13    could do some light chores. AR at 313, 318. The ALJ reasonably concluded that her opinion

14    was inconsistent with the objective medical findings and physical examination findings, which

15    the ALJ afforded more weight. AR at 21.

16    In addition, the ALJ discounted Ms. DeGrote's lay witness statements because she relied

17    on plaintiff's subjective description of the severity of her pain and limitations, which the ALJ

18    found not entirely credible. AR at 21. The ALJ could reasonably reject Ms. DeGrote's opinion

19    to the extent she was relying on plaintiff's subjective reports. AR at 313-14, 317-18. *See*

20    *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Accordingly,

21    the ALJ properly provided specific and germane reasons for affording Ms. DeGrote's opinion

22    limited weight.

23

24

# VIII.   CONCLUSION

The role of this Court is limited.  As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954.  While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.  For the foregoing reasons, the Commissioner's decision is AFFIRMED.

DATED this 30th day of October, 2017.

*James P. Donohue*
_____
JAMES P. DONOHUE
Chief United States Magistrate Judge